[Civ. No. 56306. Second Dist., Div. Three. July 30, 1979.]

CRAIG S., a Minor, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Kenneth I. Clayman, Bruce A. Hoffman, D. Heather Werthmuller and Albert J. Menaster, Deputy Public Defenders, for Petitioner.

John H. Larson, County Counsel, and Philip H. Hickok, Deputy County Counsel, for Respondent.

No appearance for Real Party in Interest.

## Opinion

**KLEIN, P. J.—**

### Statement of the Case

On May 21, 1979, Craig S., a minor (hereinafter Minor), through his attorneys, Wilbur E. Littlefield, Public Defender of Los Angeles County, and D. Heather Werthmuller (Werthmuller), deputy public defender, petitioned this court for a writ of mandate and/or prohibition seeking to compel the respondent superior court to vacate an order of May 15, 1979, which declared Werthmuller to be "unavailable" and appointed private counsel in her stead to represent Minor in a pending juvenile court matter. Minor's petition also requested a stay of the juvenile court proceedings pending this court's determination of the merits of said petition.

On May 31, 1979, we issued an alternative writ of mandate requiring respondent court to either vacate its May 15 order or, in the alternative, to show cause before this court on July 18, 1979, at 9 a.m., why a peremptory writ of mandate ordering such to be done should not issue. At the same time, the requested stay was ordered.

Respondent court thereupon selected by its return and answer the second alternative, and the matter came on for hearing before this court as directed. For the reasons discussed below, we conclude that the peremptory writ sought in Minor's petition should issue.

*Facts*

The documents before us reveal that Werthmuller was already representing Minor on a juvenile court supplemental petition matter (Welf. & Inst. Code, § 777) when, on approximately May 8, 1979, Minor received a new petition (Welf. & Inst. Code, § 602) charging him with two counts of grand theft property (Pen. Code, § 487, subd. 1). Arraignment on the new petition was set for May 15, 1979, in department 261 of the district court in Compton, the same juvenile court department wherein the supplemental petition matter was pending. Werthmuller read and analyzed the new petition and made tentative defense plans.

But on the date set for Minor's arraignment on the new petition, Werthmuller had a conflicting appearance in department 251 of the juvenile court, located in Downey. Werthmuller either personally or through her secretary informed department 261 of the conflict on May 14, 1979, and again on the morning of May 15, saying that although she would be late, she would appear as soon as possible.

However, when Werthmuller arrived in department 261 at approximately 11:20 a.m. on May 15, she was informed that the public defender had been declared "unavailable" by the presiding referee at approximately 10:45 a.m. and that private counsel had consequently been appointed to represent Minor on the new petition. Two days later, on May 17, Werthmuller appeared in the same department before the same referee to request that she be appointed attorney of record on the new petition pursuant to Minor's wishes; Werthmuller's request was denied. In the meantime, the disposition on the supplemental petition had been

continued to June 1, 1979, to trail the adjudication on the new petition set for the same day.[1]

## Contention

■ Claiming that the public defender was never, in actuality, "unavailable" and pointing to the fact that an attorney client relationship had already been established between himself and the public defender with respect to the supplemental petition matter, Minor contends that the juvenile court abused its discretion when it refused to honor Minor's preference for appointment of the public defender on the new petition matter.

## Discussion

Government Code section 27706 reads as follows: "The public defender shall perform the following duties: ¶ (a) Upon request of the defendant or upon order of the court, *he shall defend,* without expense to the defendant, . . . any person who is not financially able to employ counsel and who is charged with the commission of any contempt or offense triable in the superior, municipal or justice courts at all stages of the proceedings. . . ." (Italics added.) Appointment of counsel for indigent minors in juvenile court proceedings is provided for in Welfare and Institutions Code sections 634 and 700, the former section pertaining to detention hearings and the latter to jurisdictional hearings.

■ It is generally recognized that in counties where a public defender's office exists the court will normally appoint that office to represent indigent defendants; the alternative of appointment of private counsel is reserved for situations wherein there is no public defender, or where the public defender declares a conflict, or where he otherwise properly refuses to represent the indigent. (See Pen. Code, § 987.2, subd. (a);[2] *Spruance* v. *Commission on Judicial Qualifications* (1975) 13 Cal.3d

[1]On May 18, 1979, Minor filed a petition for writ of mandate with the presiding judge of the juvenile court, requesting the appointment of the public defender on the new petition; said petition was summarily denied the same day.

[2]Subdivision (a) of Penal Code section 987.2 provides: "In any case in which a person, including a person who is a minor, desires but is unable to employ counsel and in which counsel is assigned in the superior court, municipal court, or justice court to represent such a person in a criminal trial, proceeding or appeal, such counsel, in a county or city and county in which there is no public defender, or in a case in which the court finds that because of conflict of interest or other reasons the public defender has properly refused to represent the person accused, shall receive a reasonable sum for compensation and for necessary expenses, the amount of which shall be determined by the court, to be paid out of the general fund of the county."

778, 799 [119 Cal.Rptr. 841, 523 P.2d 1209]; *Charlton* v. *Superior Court* (1979) 93 Cal.App.3d 858, 862-863 [156 Cal.Rptr. 107]; see also *In re Brindle* (1979) 91 Cal.App.3d 660, 681 [154 Cal.Rptr. 563].)

■ Furthermore, it is well established that a trial court must exercise sound discretion in the appointment of counsel to represent an indigent defendant. (*Drumgo* v. *Superior Court* (1973) 8 Cal.3d 930, 934-935 [106 Cal.Rptr. 631, 506 P.2d 1007, 66 A.L.R.3d 984].) ■ In this regard, it has been noted: " 'Judicial discretion is that power of decision exercised to the necessary end of awarding justice based upon reason and law but for which decision there is no special governing statute or rule. Discretion implies that in the absence of positive law or fixed rule the judge is to decide a question by his view of expediency or of the demand of equity and justice. [Citation.] The term implies absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason. Discretion in this connection means a sound judicial discretion enlightened by intelligence and learning, controlled by sound principles of law, of firm courage combined with the calmness of a cool mind, free from partiality, not swayed by sympathy or warped by prejudice or moved by any kind of influence save alone the overwhelming passion to do that which is just. [Citation.]' " (*Harris* v. *Superior Court* (1977) 19 Cal.3d 786, 796 [140 Cal.Rptr. 318, 567 P.2d 750].)

■ Given this standard, we must conclude that the decision of the court in the case at bench to appoint private counsel to represent Minor on the new petition, rather than the public defender, did constitute an abuse of discretion. This appears to be especially so in light of the provision in Penal Code section 987.2, subdivision (a) (fn. 2, *ante*) which limits the authority of a trial court to compensate assigned counsel to situations wherein there is no public defender or where the public defender cannot act because of conflict or other good reason. (*Charlton* v. *Superior Court, supra,* 93 Cal.App.3d 858, 863.)

It is true that a review of the papers filed by the parties in this court discloses a number of minor factual conflicts. However, there seems to be agreement on the basic facts framing the issue before us, including the fact that Werthmuller had been appointed in department 261 on March 28, 1979, to represent Minor with regard to the supplemental petition. It is additionally apparent from the record that the same referee who made

the March 28 appointment was prepared to appoint Werthmuller on May 15 to represent Minor on the new petition, but declined to do so solely because of his determination that she was "unavailable."[3]

While the number, times and sources of calls to the court notifying it that Werthmuller would be late on the 15th are disputed, there is no question but that the court was on notice that Werthmuller was engaged elsewhere that morning but clearly intended to be present at the arraignment of Minor, whom she considered to be her client. It is also clear that private counsel was appointed at 10:45 a.m. and Werthmuller arrived at 11:20 a.m.

Although there is some confusion on the point, it also appears that Minor and his mother were of the impression that Werthmuller, who was representing him on the first matter, would continue to be his lawyer on the new petition. The partial transcript lodged with this court reflects the following colloquy on June 1, 1979, between Minor's mother and the court:

"THE COURT: Did you ever ask the court to appoint the public defender [on May 15, 1979] as your son's lawyer?

"MINOR'S MOTHER: You mean for the second case or the first one?

"THE COURT: The date when I appointed Mr. Hall, the gentleman seated to Miss Werthmuller's left, did you ever ask me to appoint Miss Werthmuller?

"MINOR'S MOTHER: No, he already had her."

Moreover, that the matter relating to the new petition was a public defender case in the first instance is undisputed. Before the court declared the public defender "unavailable," it first inquired of Minor's mother as to whether she had the funds to hire an attorney for her son, and when she replied in the negative, the court stated: "All right, normally this would be the public defender's case. . . ."

---

[3]The referee made the following statement during the May 15 proceeding: "[T]he Public Defender, Ms. Heather Werthmuller, is unavailable in view of the fact that she is engaged in trial in Los Padrinos, and, accordingly, since the minor and his mother have been waiting in this court since at least 9:00 o'clock, the court is going to appoint Mr. Roland Hall, a private attorney. . . ."

While we sympathize with the fact that the trial courts are busy and function under pressure to expedite their many cases and accommodate persons who are waiting for judicial action, it nevertheless appears that in the instant case the trial court acted arbitrarily in not postponing the arraignment so that the tardy public defender could have handled the new petition. The public defender too is overburdened, and suffers pressures similar to those of the trial court.

Further, there is no showing that the trial court was not in fact proceeding with other court business while awaiting the arrival of the public defender. That being the case, only Minor and his mother were being inconvenienced by the delay, and they desired the public defender to represent Minor.

As Minor argues, a court cannot avoid appointment of the public defender simply by calling the case when the public defender is not present. The concept of "unavailability" requires more than the absence of the public defender at the instant the case is called, and more than an additional delay of some 40 minutes, as occurred in the matter before us. This is particularly true when, as in the case at bench, the reason for the public defender's lateness is the necessity of making an appearance in another pending matter.

To hold that the trial court's conduct in the fact situation before us did not constitute an abuse of discretion would be to acquiesce in a state of affairs fraught with the opportunity for " 'capricious disposition or whimsical thinking' " (*Harris* v. *Superior Court, supra,* 19 Cal.3d 786, 796). Here, there is a strong inference that the trial court was annoyed with the public defender for being late, and was not exercising the required " 'discriminating judgment' " (*ibid.*) in taking into consideration all the relevant factors that should have been a part of the decision as to whether to appoint the public defender or private counsel.[4]

Let a peremptory writ of mandate issue directing respondent court to set aside its order of May 15, 1979, declaring the public defender to be

[4]Except with respect to the portion of *Harris* v. *Superior Court, supra,* 19 Cal.3d 786, which discusses the general concept of judicial discretion, we reject any suggestion by respondent court that the opinion in that case is otherwise relevant to the question before us. In *Harris* it was undisputed that the public defender was unavailable because of a conflict (*id.,* at p. 789); the only issue before the Supreme Court was whether the trial court had abused its discretion in appointing counsel different from that selected by the defendants. Here, the question is whether the public defender was, in fact, unavailable at all.

"unavailable" and appointing private counsel in her stead and to undertake further proceedings relative to the appointment of the public defender in accordance with the views expressed herein.

Allport, J., and Potter, J., concurred.

On August 23, 1979, the opinion was modified to read as printed above.